J-A22008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.L.Z, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.Z., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 678 MDA 2021 |

Appeal from the Decree Entered May 3, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  1888 of 2020

| | | |
|---|---|---|
| IN THE INTEREST OF: M.J.Z., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.J.Z., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 679 MDA 2021 |

Appeal from the Decree Entered May 3, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  1889 of 2020

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:          **FILED: DECEMBER 23, 2021**

M.J.Z., Sr. ("Father"), appeals from the decree entered on May 3, 2021, which terminated his parental rights involuntarily to his children, C.L.Z., a

female born in September 2013, and M.J.Z., Jr., a male born in November 2015. We affirm.[1]

We glean the facts and procedural history of this case from the certified record. In October 2018, the Lancaster County Children and Youth Social Service Agency ("the Agency") obtained custody of C.L.Z. and M.J.Z., Jr., and placed them in foster care. N.T., 4/12/21, at 18. The Agency interceded because Father sexually abused an older daughter of S.A.S. ("Mother"), who denied that the abuse occurred. *Id*. at 11, 51-52. In addition, there was an incident of domestic violence in August 2018, during which both Mother and Father were intoxicated. N.T., 10/26/18, at 15-16. Subsequent drug screens revealed Mother and Father were using marijuana, and the Agency was concerned that Mother had untreated mental health needs. *Id*. at 9-11; N.T., 4/12/21, at 18, 29. On November 29, 2018, the juvenile court adjudicated C.L.Z. and M.J.Z., Jr., dependent. The primary permanency goal for the children was to return to the parents, with a concurrent permanency goal of adoption.

Father pled guilty to criminal charges relating to his sexual abuse of Mother's older daughter. The trial court imposed fifteen to thirty-six months

---

[1] The orphans' court also terminated the parental rights of S.A.S. ("Mother), whose appeal is listed at Superior Court docket numbers 650 and 651 MDA 2021. We address her appeal in a separate memorandum.

of incarceration with a maximum sentence that expiries in January 2022.[2] N.T., 4/12/21, at 11, 22, 35. Father's sentencing conditions prohibited him from contact with C.L.Z. and M.J.Z., Jr., unless approved by a court, and the certified record indicates that no court ever granted its approval. *Id.* at 15, 26-27. Meanwhile, the juvenile court found aggravated circumstances and directed that the Agency make no further efforts to reunify Father with C.L.Z. and M.J.Z., Jr. *Id*. at 13, 35-36.

On October 2, 2020, the Agency filed a petition to terminate Father's parental rights to C.L.Z. and M.J.Z., Jr., pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court held a hearing on the petition on April 12, 2021, at which the court heard testimony from the Agency's caseworker, Zionne West, S.C., the foster father of C.L.Z. and M.J.Z., Jr., Father, and Mother.[3] Following the hearing, on May 3, 2021, the orphans' court entered the above-referenced decree terminating Father's rights to

---

[2] It appears that Father was originally alleged to have sexually abused two of Mother's older daughters. N.T., 5/26/18, at 5-8. Later testimony suggests that he pled guilty to charges relating to sexual abuse of one daughter and not the other. *See* N.T., 4/12/21, at 11, 22 (the Agency caseworker referring to Father as "a man that already victimized one of [Mother's] children.").

[3] A single attorney, identified as the guardian *ad litem* ("GAL"), represented the legal interest and best interests of both children during the termination hearing. The GAL expressed support for the termination of Father's parental rights as that result was consistent with the children's "desire . . . to continue to live at their resource home forever." N.T., 4/12/21, at 68-69. The orphans' court did not find a conflict between the children's legal interest and best interests.

C.L.Z. and M.J.Z., Jr. Father timely filed separate notices of appeal on May 28, 2021, along with concise statements of errors complained of on appeal.[4]

Father now raises the following claims for our review:

I. Did the [orphans'] court err and abuse its discretion in concluding that Father evidenced a settled purpose of relinquishing his parental claim to his children or refused or failed to perform his parental duties for a period of six (6) months immediately preceding the filing of the Petition where Father at all times desired to exercise his parental claim to his children but his efforts were hindered due to his incarceration and where the release of Father from incarceration was imminent?

II. Did the [orphans'] court err and abuse its discretion in concluding that Father's incarceration caused [C.L.Z. and M.J.Z., Jr.,] to be without essential parental care, control or subsistence and that the cause of the alleged failure could not or would not be remedied by Father within a reasonable period of time?

III. Did the [orphans'] court err and abuse its discretion in concluding that Father would not be in a position to care for [C.L.Z. and M.J.Z., Jr.,] upon his imminent release from prison?

IV. Did the [orphans'] court err and abuse its discretion in concluding that the termination of Father's parental rights would best serve the needs and welfare of [C.L.Z. and M.J.Z., Jr.,] where Father was due to be released from incarceration as early as May 2021 and was committed to resuming his parental duties?

---

[4] Prior to the hearing, on March 15, 2021, the orphans' court incorporated the juvenile court records from the dependency proceedings of C.L.Z. and M.J.Z., Jr., into the termination proceedings. N.T., 3/15/21, at 2-3; N.T., 4/12/21, at 4. Because the juvenile court records did not appear in the certified record this Court received on appeal, we entered *per curiam* orders on November 15, 2021, directing the clerk of courts to transmit the juvenile court records for our review. We received a supplemental record on November 18, 2021. While the supplemental record we received is incomplete, we are confident that the certified record on appeal is sufficient to conduct appellate review, and we do not wish to further delay resolution of this Children's Fast Track appeal. Therefore, we address the merits of Father's claims.

Father's brief at 3. Both the Agency and the GAL filed briefs in support of the termination of Father's parental rights.

Our standard of review requires us to accept the findings of fact and credibility determinations of the orphans' court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citing *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). If the record supports the court's findings, we must determine whether the court committed an error of law or abused its discretion. *Id*. An abuse of discretion does not occur merely because the record could support a different result. *Id*. (citing *In re Adoption of S.P.*, *supra* at 827). We may find an abuse of discretion "'only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.'" *Id*. (quoting *In re Adoption of S.P.*, *supra* at 826).

Pennsylvania's Adoption Act governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S. §§ 2101-2938. It provides for a bifurcated analysis, in which the orphans' court focuses initially on the parent's conduct pursuant to § 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citing *In re R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006)). If the court finds that the party seeking termination has established statutory grounds pursuant to § 2511(a), it must then turn its attention to § 2511(b), which focuses on the child's needs and welfare. *Id*. A critical aspect of § 2511(b) is discerning whether the child has an emotional bond with his or her parent and what effect severing that bond may have on the child. *Id*. The party seeking termination

bears the burden of proof under both § 2511(a) and (b) by clear and convincing evidence. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006).

As noted *supra*, the orphans' court terminated Father's parental rights to C.L.Z. and M.J.Z., Jr., pursuant to § 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of § 2511(a), in addition to § 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We analyze the orphans' court's decision pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

- 6 -

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of § 2511(a)(2), the party requesting termination must prove that (1) the parent has exhibited repeated and continued incapacity, abuse, neglect, or refusal; (2) the incapacity, abuse, neglect, or refusal has caused the child to be without essential parental care, control, or subsistence; and (3) the parent cannot or will not remedy the causes of the incapacity, abuse, neglect, or refusal. ***In the Interest of D.R.-W.***, 227 A.3d 905, 912 (Pa.Super. 2020) (quoting ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa.Super. 2003)).  This subsection does not apply solely to affirmative misconduct but also permits termination based on a parent's incapacity. ***In re S.C.***, 247 A.3d 1097, 1104 (Pa.Super. 2021).  Further, "a parent's incarceration is relevant to the [§ 2511](a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates."  ***In re A.D.***, 93 A.3d 888, 897 (Pa.Super. 2014) (quoting 23 Pa.C.S. § 2511(a)(2)).

Father argues that C.L.Z. and M.J.Z., Jr., entered foster care because of the sexual abuse allegations against him and substance abuse concerns involving both him and Mother.  Father's brief at 12.  He emphasizes that there were no concerns that he lacked housing, income, or a relationship with his children.  ***Id***.  Father insists that the absence of these latter concerns contradicts the assertion that he is incapable of parenting C.L.Z. and M.J.Z.,

Jr. *Id*. In addition, he maintains that he would be released from incarceration "as early as one month following the termination hearing[,]" and would be able to work toward reunification upon his release. *Id*.

The orphans' court concluded that the Agency had produced clear and convincing evidence in support of its termination petition. Orphans' Court Opinion, 6/9/21, at 13. The court found that Father's incarceration and the sentencing conditions prohibiting contact with the children rendered him incapable of providing proper parental care. *Id*. Further, the court found no credible evidence that Father would be able to regain the ability to provide parental care due to his criminal history. *Id*.

Father's claim reveals a myopic view of parental incapacity. As quoted above, our law does not restrict parental incapacity to cases of homelessness, indigence, or abandonment as Father suggests but provides that incarceration may serve as a dispositive factor when assessing a parent's ability to provide for a child's needs. *In re A.D.*, *supra* at 897 (holding, incarceration "may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that [§2511(a)(2)] contemplates"). Here, Father has been unable to provide parental care since October 2018, following his sexual abuse of Mother's older daughter and his subsequent incarceration. N.T., 4/12/21, at 51-52. Father pled guilty to criminal charges related to this abuse and received a sentence of fifteen to thirty-six months of incarceration. *Id*. at 11, 22, 35. At the time of the hearing on April 12, 2021, C.L.Z. and M.J.Z., Jr.,

had been without parental care for approximately thirty months because of Father's conduct.

While Father testified that he would go before the parole board in May 2021, he acknowledged that there was no guarantee that it would grant parole, and that his maximum sentence would not expire until January 2022. *Id*. at 35. Accordingly, it was possible C.L.Z. and M.J.Z., Jr., would remain in foster care for a total of approximately thirty-nine months until Father's release. Even after Father's release, it is unclear when, if ever, he would be able to demonstrate the maturity and stability needed to parent his children. As this Court has often emphasized, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re R.J.S.*, *supra* at 513.

Notably, Agency caseworker, Zionne West, testified she was assigned to this matter in August 2020, and that Father sent her only one letter inquiring about C.L.Z. and M.J.Z., Jr., which she received in November 2020. N.T. 4/12/21, at 14-15. She testified that Father also sent a letter to the previous caseworker. *Id*. at 15. Father presented a somewhat more positive assessment of his efforts, testifying that he sent a total of "[f]our or five" letters to caseworkers inquiring about the children. *Id*. at 39-40. Regardless of whether Father sent two or five missives to the Agency since his

incarceration, the testimony established the limits of Father's tepid interest in his children and belied his assertion that he will remedy his parental incapacity in a timely manner upon his eventual release.

Our review of the record supports the finding that Father's incapacity, abuse, neglect, or refusal deprived C.L.Z. and M.J.Z., Jr., of essential parental care, control or subsistence, and that Father cannot or will not remedy the conditions and causes of his incapacity, abuse, neglect, or refusal. We discern no abuse of discretion or error of law by the orphans' court, and we affirm the termination decree pursuant to § 2511(a)(2).

We next consider whether the orphans' court erred or abused its discretion as it relates to § 2511(b), which focuses on the needs and welfare of the child and includes an analysis of any emotional bond the child may have with his or her parent. The key questions when conducting the needs and welfare analysis are whether the bond is necessary and beneficial and whether severing it will cause the child extreme emotional consequences. *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa.Super. 2018). It is important to recognize that the existence of a bond, while significant, is only one of many factors courts should consider when addressing § 2511(b). *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.,* 33 A.3d 95, 103 (Pa.Super. 2011)). Other factors include "the safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*.

Father contends that the orphans' court failed to consider whether he shares a bond with C.L.Z. and M.J.Z., Jr. Father's brief at 14. He emphasizes that the children lived with him prior to their adjudications of dependency, at which time a bond would have formed. *Id*. Father argues he demonstrated the existence of this bond through his "consistent attempts" at reunification and protests that his inability to visit C.L.Z. and M.J.Z., Jr., does not mean his bond with them no longer exists or that severing the bond would not harm them. *Id*. He maintains that the orphans' court heard little evidence about his bond with C.L.Z. and M.J.Z., Jr., at the hearing. *Id*. at 14-15.

The orphans' court found that terminating Father's parental rights would best serve the needs and welfare of C.L.Z. and M.J.Z., Jr. *See* Orphans' Court Opinion, 6/9/21, at 16. The court reasoned that it was not clear when Father would be able to have contact with C.L.Z. and M.J.Z., Jr., because of his incarceration and sentencing conditions, let alone unsupervised contact. *Id*. The court further reasoned that C.L.Z. and M.J.Z., Jr., had spent "nearly half of their lives" in their foster home[5] and shared a bond with the foster parents. *Id*. at 17. The court relied on the representations of the GAL, who supported termination of Father's parental rights and indicated C.L.Z. and M.J.Z., Jr., wanted to live with their foster parents forever. *Id*. The court concluded that

---

[5] At the time of the hearing on April 12, 2021, C.L.Z. was just over seven-and-a-half years old, and M.J.Z., Jr., was just under five-and-a-half years old. They had lived in their foster home since December 2018, for a total of two years and four months. N.T., 4/12/21, at 16, 31.

C.L.Z. and M.J.Z., Jr., "deserve to remain in a stable family that is ready, willing, and able to provide them with needed permanency and stability-things that Father cannot provide." *Id*.

Contrary to Father's claim that the orphans' court failed to conduct an adequate § 2511(b) bonding analysis, the court cited pertinent authority describing the requisite considerations in its opinion. *See* Orphans' Court Opinion, 6/9/21, at 15-16. Although the court did not specifically state whether Father shared a bond with C.L.Z. or M.J.Z., Jr., it was seemingly undisputed at the hearing that no necessary or beneficial bond existed. Father's counsel acknowledged this reality in her closing argument, "I didn't really get into a bond with [Father] because the children are so young and he hasn't had any contact with them because of the aggravated circumstances of his incarceration." N.T., 4/12/21, at 72.

The lack of any beneficial bond in this case is most evident given the details of Father's incarceration. Once again, C.L.Z. and M.J.Z., Jr., entered foster care in October 2018. *Id*. at 18. Father initially visited C.L.Z. and M.J.Z., Jr., while in Lancaster County Prison, but his sentencing conditions subsequently forbade him from contacting the children without court approval, which never occurred. *Id.* at 15, 26-28. These sentencing conditions would have been in effect by September 2019 at the latest, as that is when Father arrived at a State Correctional Institution. *Id*. at 35. Thus, when the hearing occurred, C.L.Z. and M.J.Z., Jr., had been out of Father's care for

approximately two-and-a-half years and had not had any contact with Father at all in over a year and a half.

Father's long absence from the lives of C.L.Z. and M.J.Z., Jr., shows that any emotional attachment they might have to him would be limited. It was within the discretion of the orphans' court to weigh that partial attachment against other factors, including Father's inability to provide C.L.Z. and M.J.Z., Jr., with the necessary permanence and stability and the extensive time they have remained in their foster home, and to conclude termination of Father's rights would best serve their needs and welfare pursuant to § 2511(b). **_See C.D.R._**, **_supra_** at 1219-20.

For all the foregoing reasons, we conclude that the orphans' court did not commit an abuse of its discretion or error of law by terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/23/2021